# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BOBBY BROWN and BROWN RANCH, LLC,

    *Plaintiffs,*

vs.

MONSANTO COMPANY, BAYER CROPSCIENCE HOLDING, INC, and CHANNEL BIO, LLC,

    *Defendants.*

Case No. 19-1228-EFM-JPO

## MEMORANDUM AND ORDER

Plaintiffs Bobby Brown and Brown Ranch LLC filed suit against Defendants Monsanto Company, Bayer Cropscience Holding, Inc., and Channel Bio, LLC, alleging breaches of implied and express warranties arising from a purchase of soybean seeds. This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 16). For the following reasons, the Court grants the Motion. The Court, however, gives Plaintiffs leave to file an amended complaint no later than May 1, 2020, to cure the defects in the complaint.

## I.        Factual and Procedural Background[1]

In the Spring of 2018, Plaintiffs purchased Channel Dicamba Soybean seeds from "the defendant"—though Plaintiffs do not identify which of the three named Defendants sold Plaintiffs the seeds. After planting the seeds, more than 200 acres of the Plaintiffs' crop failed to "come up." Brown contacted his local seed dealer, who then contacted Robert Duffin. Plaintiffs identify Duffin as Defendants' field man and district manager representative. Duffin provided additional seeds for Plaintiffs to replant. The Plaintiffs replanted the additional seed in July of 2018, but these seeds "only sprouted sporadically and did not provide a good consistent stand."[2] Brown contacted Duffin a second time, advising him that the seeds were again unproductive; Duffin simply told Brown that the seeds would come up. Plaintiffs informed Defendants that the defective seeds caused Plaintiffs damages, but Defendants "failed and refused to resolve the matter."[3]

Robert Kurtz, the Plaintiffs' seed dealer, informed Plaintiffs that the Channel Dicamba seeds performed poorly for his crop as well. Brown also alleges that a representative for Defendants advised the seed dealers to discontinue selling the Channel Dicamba seeds to customers in Plaintiffs' area. Additionally, Plaintiffs submitted the seeds for testing which revealed a germination rate of only 6–7 percent.

Plaintiffs allege that the seeds were defective and that Defendants breached both implied and express warranties. Due to the seeds' poor performance, Plaintiffs claim they suffered

---

[1] The facts are taken from Plaintiffs' Complaint and are accepted as true for the purposes of this ruling.

[2] *Id.*

[3] *Id.*

damages from reduced crops, the cost of replanting the seeds, raised insurance rates, among other economic hardships.

Plaintiffs originally filed suit in state court, and Defendants removed the case here. Defendants then jointly filed a Motion to Dismiss, arguing first that Plaintiffs' Complaint fails to allege facts directed to a specific defendant. Defendants also argue that Plaintiffs allegations do not state a plausible claim for a breach of either an implied or an express warranty. This matter is fully briefed, and the Court now rules as follows.

## II.    Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may move for dismissal of "a claim for relief in any pleading" that fails "to state a claim upon which relief can be granted." Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4] "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient;" rather, the pleading "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5] The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[6] In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[7] All well-pleaded facts are assumed to be true and

---

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Ridge at Red Hawk*, 493 F.3d at 1177 (emphases in original).

[6] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

[7] *Iqbal*, 556 U.S. at 679.

are construed in the light most favorable to the non-moving party.[8] Although a plaintiff need not allege every element of his action in specific detail, he cannot rely on conclusory allegations.[9]

### III.    Analysis

Defendants argue that the Complaint does not comply with Federal Rule of Civil Procedure 8's pleading requirements because Plaintiffs fail to direct their substantive allegations toward any specific defendant. Additionally, Defendants argue that Plaintiffs' allegations fail to state a claim for breach of an express warranty or breach of the implied warranty of merchantability. The Court takes the liberty of considering Defendants' arguments in reverse order.

**A.    Express Warranty**

Under Kansas law, express warranties by a seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.[10]

An express warranty may be created without the use of formal words such as "warrant" or "guarantee."[11] An express warranty may be created even without a specific intent by the seller to

---

[8] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).

[9] *See Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991) (internal citations omitted).

[10] K.S.A. § 84-2-313(1)(a)–(c).

[11] *Id.* § 84-2-313(2).

make a warranty.[12] However, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."[13] Finally, "for there to be an express warranty there must be an explicit statement, written or oral, by the party to be bound *prior to or contemporaneous with the execution of the contract*."[14]

Here, Plaintiffs provide only one statement that they claim created an express warranty: the promise by Robert Duffin—"defendants' field man and district manager representative"—that the seeds "would come up." But Plaintiffs allege that Duffin made this promise months after the sale of the seed. To create an express warranty, the promise or affirmation of fact must become "part of the basis of the bargain," meaning the promise must have made "prior to or contemporaneous with the execution of the contract."[15] So, Duffin's alleged promise after the sale cannot create an express warranty. Because Plaintiffs have failed to adequately allege the existence of an express warranty, the Court grants Defendants motion to dismiss Plaintiffs breach of express warranty claim.

### B.   Implied Warranty of Merchantability

Plaintiffs make the rather conclusory and vague allegation that Defendants breached "the implied warranty." Defendants argue in their Motion to Dismiss that Plaintiffs have not stated a

---

[12] *Id.*

[13] *Id.*

[14] *Corral v. Rollins Protective Servs. Co.*, 240 Kan. 678, 732 P.2d 1260, 1266 (1987) (emphasis added).

[15] K.S.A. § 84-2-313(1)(a)–(c); *Corral*, 732 P.2d at 1266 ("It is clear that for there to be an express warranty there must be an explicit statement, written or oral, by the party to be bound prior to or contemporaneous with the execution of the contract.").

claim for either a breach of the implied warranty of merchantability[16] or a breach of the implied warranty of fitness for a particular purpose.[17] In their Response, Plaintiffs addressed only the implied warranty of merchantability. Although they never expressly say as much, the Court interprets Plaintiffs' Response as clarifying that they never intended to bring a claim for breach of implied warranty of fitness. Accordingly, the Court only addresses Defendants' arguments relating to the implied duty of merchantability.

Generally, under Kansas law "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[18] To prevail on a breach of implied warranty of merchantability claim, "a buyer must prove first, the ordinary purpose of the type of goods involved, and second, the particular goods sold were not fit for that purpose."[19] "Kansas case law has interpreted this to mean that the buyer must show the goods were defective and the defect existed at the time of the sale."[20]

Defendants argue that Plaintiffs have failed to allege any facts showing the ordinary purpose of the soybean seeds or how the seeds were not fit for that purpose. Defendants compare Plaintiffs' allegations with those in *Genesis Health Clubs, Inc. v. LED Solar & Light Company*.[21] In *Genesis*, the plaintiff purchased new LED lighting for its health clubs from the defendant. The plaintiff brought a breach of implied warranty claim, alleging that "the lighting did not 'run of

---

[16] *See* K.S.A. § 84-2-314.

[17] *See id.* § 84-2-315.

[18] K.S.A. § 84-2-314(1).

[19] *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517, 525 (1983).

[20] *Id.*

[21] 2013 WL 5276150, at *1 (D. Kan. 2013).

even kind and quality;' that the color of the lighting varied; that the lighting did not produce the wattage savings guaranteed by LED Solar; that the lighting often did not work at all; and that the lighting was not adequately contained, packaged and labeled 'because many of the shipped items did not arrive at Genesis as promised.' "[22] The defendant moved to dismiss the implied warranty of merchantability claim. First, the defendant argued that the plaintiff "failed to plead an actual defect in the lighting and, instead, pleads that the lighting functioned as it was designed to function—by producing light."[23] The court firmly rejected this line of reasoning.[24] The defendant's second argument was targeted specifically to the plaintiff's allegation that the lighting was not adequately contained, packaged, or labeled. On this point, the court concluded that the plaintiff's allegations were conclusory—the plaintiff alleged no facts suggesting how the containment, packaging, or labeling was inadequate or how any purported inadequacies damaged the plaintiff.[25]

Here, Defendants argue that Plaintiffs' allegations are as conclusory as the *Genesis* plaintiff's allegations regarding the containment, packaging, and labeling of the purchased lighting. The Court disagrees. In *Genesis*, the plaintiff made the conclusory statement that the lighting was not adequately contained, packaged, and labeled because many of the shipped items did not arrive at Genesis as promised.[26] Whereas here, Plaintiffs allege that they planted the

---

[22] *Id.* at *4.

[23] *Id.*

[24] *Id.* ("It cannot be credibly argued that the lighting is 'fit for the ordinary purposes for which it is used simply because the lighting produces light . . . .").

[25] *Id.*

[26] *Id.*

soybean seeds and the seeds failed to produce a crop on 216.91 acres of land. Plaintiffs allege that after planting the seeds a second time, the crop "sprouted sporadically" and failed to "provide a good consistent stand." Plaintiffs also allege that subsequent testing revealed that the seeds had a germination rate of only 6–7 percent. Finally, Plaintiffs allege that the underperforming crops damaged Plaintiffs, including the cost of replanting the seeds, lost revenue from a reduced crop, and increased crop insurance rates. Based on these facts, the Court holds that Plaintiffs have plausibly alleged that the crop seeds were not fit for their ordinary purpose due to a low germination rate and this defect caused Plaintiffs to suffer economic harm.

**C.     Plaintiffs' failure to link allegations to any specific Defendant**

This brings the Court to Defendants' point of contention that Plaintiffs' Complaint fails to satisfy the pleading standards in Federal Rule of Civil Procedure 8(a).[27] To comply with Rule 8(a), "the complaint must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[28] Put another way: "[t]he complaint must 'make clear exactly *who* is alleged to have done *what* to *whom* . . . .' "[29] Defendants argue that Plaintiffs did not provide them fair notice because they failed to link any substantive allegation to any specific defendant. Defendants argue that it is impermissible for Plaintiffs to lump all three Defendants together in the Complaint.

---

[27] Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").

[28] *Mayfield v. Presbyterian Hosp. Admin.*, 772 F. App'x 680, 685 (10th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).

[29] *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)).

To support this assertion, Defendants cite generally two decisions by the Tenth Circuit: *Hart v. Salois*[30] and *VanZandt v. Oklahoma Department of Human Services.* [31]

In response, Plaintiffs argue they have sufficiently put Defendants on notice of the claims against them. First, Plaintiffs argue that they can bring a breach of warranty claim against any "product seller" including "the manufacturer, wholesaler, distributer and retailer of the product."[32] Plaintiff then argues that without discovery it cannot determine "what part each of the Defendants play" in manufacturing, wholesaling, distributing, and retailing the defective soybean seeds.[33] Although Defendants did not raise this concern, the Court doubts that Plaintiffs' definition of "product seller"—for which Plaintiffs provide no citation to any legal authority—is applicable to this Case.[34] Regardless, the Court need not rule on this matter because Plaintiffs concede in their pleadings that they are unaware which of the Defendants—if any—was involved in the manufacturing, wholesaling, distributing, or retailing of the allegedly defective seeds. Instead, Plaintiffs argue that to identify whether one of the Defendants (or even a third party) fulfilled these roles requires formal discovery. But Plaintiffs may not rely on discovery to bypass their burdens

---

[30] 605 F. App'x 694 (10th Cir. 2015).

[31] 276 F App'x 843 (10th Cir. 2008).

[32] Doc. 21, at 4

[33] *Id.*

[34] Although Plaintiffs give no indication where they got their definition of a "product seller," the Court presumes that Plaintiffs pull this definition from the Kansas Product Liability Act ("KPLA"). *See* K.S.A. § 60-3302(a) (" 'Product seller' means any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption. The term includes a manufacturer, wholesaler, distributor or retailer of the relevant product . . . ."). However, to bring a breach of implied warranty of merchantability claim under the KPLA, the defective product must have caused personal injury, emotional harm, or property damage. *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1241 (D. Kan. 2007) (citing K.S.A. § 60-3302(c), (d)). The KPLA does not apply to warranty claims based exclusively on economic harm. *Id.* at 1241–42. Those claims are generally brought under the Kansas Uniform Commercial Code, which has its own definition of a "seller." K.S.A. § 84-2-103 (defining a "seller" as "a person who sells or contracts to sell goods").

at the pleading stage.[35] Plaintiffs have not pleaded any facts suggesting that a particular Defendant was involved with manufacturing, wholesaling, distributing, or retailing the soybean seeds. Indeed, Plaintiffs' Complaint is devoid of any allegations specifically linking any Defendant to the product in question—they do not even identify which Defendant is "the defendant" they purchased the seeds from. This is too speculative and ambiguous even for the pleading stage of litigation. Simply put, Plaintiffs' expansive definition of a "product seller" cannot save their claim if they fail to plead facts bringing any Defendant within that definition.

Next, Plaintiffs argue that Defendants mischaracterize the caselaw—with specific focus on the Tenth Circuit's *Hart* decision—in arguing that lumping the Defendants together is inconsistent with Rule 8(a)'s pleading requirements. Plaintiffs highlight how vastly different the allegations in their Complaint are from the allegations in *Hart*. On this point, the Court agrees with Plaintiffs.

In *Hart*, the Tenth Circuit affirmed the district court's dismissal of a pro se plaintiff's complaint for, among other reasons, failing to meet Rule 8's pleading requirements. The district court noted that the plaintiff's complaint—which exceeded 200 pages, included more than a thousand numbered paragraphs, and asserted 60 claims for relief against 30 defendants—alleged "a grandiose conspiracy . . . by a group of defendants, most of whom probably never have met each other or were not aware each other existed until the filing of this lawsuit."[36] Additionally, the district court stated that both the Court and the parties are "left to guess and attempt to parse out which claims related to which individuals because [the plaintiff] regularly rotates between

---

[35] *See United States ex rel. Edalati v. Sabharwal*, 2019 WL 4736941, at *2 (D. Kan. 2019).

[36] *Hart*, 605 F. App'x at 697.

references to 'Defendants' and 'Individual Defendant' without making it clear which allegations are directed to which defendant or defendants."[37]

In affirming the district court's decision, the Tenth Circuit explained that the primary defect with the plaintiff's complaint was its "failure to connect his 60 separate claims to the Complaint's hundreds of factual allegations" and this defect was only exacerbated by the plaintiff's "failure to identify each individual defendant's culpable actions."[38] Based on these defects in the complaint, the Tenth Circuit held that the plaintiff "fail[ed] to demonstrate that the district court abused its discretion in dismissing the complaint."[39]

The Court agrees with Plaintiffs that this case is vastly different than *Hart*. Here, Plaintiffs' factual allegations consist of approximately two pages, Plaintiffs' claims are brought under just two legal theories, and Plaintiffs name only three defendants. Unlike *Hart*, where sorting out the unruly factual allegations and linking them to the plaintiff's 60 claims would have been cumbersome on the district court and the defendants, Plaintiffs' short Complaint does not cause similar difficulties. But while Plaintiffs' Complaint does not suffer from the same unwieldy defects as the complaint in *Hart*, the simplicity of Plaintiffs' Complaint is ultimately not a redeeming quality. Rather, Plaintiffs' Complaint suffers from not being descriptive enough. This Court infers that in *Hart* it was at least conceivable that the district court could have waded through the lengthy complaint to sort out a viable claim against one of the defendants. But here, no amount of effort put into reviewing Plaintiffs' Complaint changes the fact that Plaintiffs fail to allege which

---

[37] *Id.*

[38] *Id.* at 701.

[39] *Id.*

Defendant sold them the seeds or any facts connecting one of the Defendants with the manufacture or distribution of the seeds.

The Court agrees with Defendants that Plaintiffs' Complaint does not meet its obligation to "make clear exactly *who* is alleged to have done *what* to *whom*."[40] But had Plaintiffs simply identified which Defendant was "the defendant" that sold them the soybean seeds, Plaintiffs would have sufficiently stated a breach of implied warranty of merchantability claim against that Defendant.[41] Under these circumstances, the Court holds that Plaintiff's Complaint does not comply with Rule 8(a)'s pleading requirements and grants Defendants' Motion to Dismiss Plaintiffs' Complaint. However, the Court will allow Plaintiffs the opportunity to file an amended complaint, in which they can identify "the defendant" that sold them the seeds.[42] Plaintiffs may also provide any facts linking the other Defendants to the manufacture or sale of the seeds. Plaintiffs must file their amended complaint no later than May 1, 2020; otherwise, the case will be dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs may file an amended complaint no later than May 1, 2020.

---

[40] *Robbins*, 519 F.3d at 1249–50; *see also VanZandt*, 276 F. App'x at 849.

[41] The Court recognizes that it may be likely that Plaintiffs were referring to Defendant Channel Bio, LLC, considering the Plaintiffs were purchasing Channel Dicamba Soybean seed[s]. But given Plaintiffs' inclusion of the other two Defendants in this lawsuit, that is far from certain. Ultimately, the burden is on Plaintiffs to make this clear. *VanZandt*, 276 F. App'x at 849.

[42] *See Genesis*, 2013 WL 5276150, at *4 (allowing a plaintiff to amend its pleading to "flesh out" its allegations); *see also Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997) (permitting a plaintiff "to amend its complaint to allege additional, clarifying facts" to comply with Rule 8(a)).

**IT IS SO ORDERED**.

Dated this 17th day of April, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE